UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| EVARISTO NAVARRO RODRIGUEZ,<br><br>　　　　　　　　　Petitioner,<br><br>v.<br><br>TIM GARRET, *et al.*,<br><br>　　　　　　　　　Respondents. | Case No. 3:20-cv-00691-ART-CLB<br><br>**Order Granting Motion for Discovery, Dismissing Motion to Dismiss without Prejudice, and Granting Motion to File Exhibits under Seal**<br><br>(ECF No. 31, 45, 58) |

28 U.S.C. § 2254 habeas corpus petitioner Evaristo Navarro Rodriguez, represented by the Federal Public Defender ("FPD"), has filed a second motion to conduct discovery. (ECF No. 31.) Respondents opposed, and Rodriguez replied. (ECF Nos. 44, 66.) As discussed below, the court grants the motion to conduct discovery, denies without prejudice Respondents' motion to dismiss (ECF No. 45), and grants Respondents' motion for leave to file certain confidential documents under seal. (ECF No. 58.)

I. **Background**

A jury convicted Rodriguez of false imprisonment with a deadly weapon, discharging a firearm at or in a vehicle, being an ex-felon in possession of a firearm, and assault with a deadly weapon. (Exhibit 1.)[1] The convictions arose from an incident where four friends were heading to their truck in a casino parking garage late one night when two men and two women, all Hispanic, approached, yelling insults. (ECF No. 17, pp. 9-11.) The group surrounded the truck, blocking its exit. The driver got out and ran toward one of the men who was dressed in black. The man wearing black discharged a pistol into the air and

---

[1] Exhibits referenced in this order are found at ECF Nos. 14, 20, 32, 46-57, 59, 61.

1

then shot between two of the men who had exited the truck. The four victims testified at trial, stating that one Hispanic man was dressed in tan and the one with the gun was dressed in black. Reno police responded and followed Rodriguez as he drove his vehicle out of the casino parking garage. Police officers initiated a traffic stop and handcuffed Rodriguez and the female passenger. They searched the vehicle and found a black shirt and firearm under the passenger seat.

The state district court adjudicated Rodriguez a habitual criminal and sentenced him to four consecutive terms of 8 to 20 years. (Exh. 1.) The Nevada Supreme Court affirmed his convictions in June 2015, and the Nevada Court of Appeals affirmed the denial of his state postconviction petition in November 2020. (Exhs. 5, 12.)

Rodriguez dispatched his original federal habeas petition for filing in December 2020. (ECF No. 10.) The court granted his motion for counsel and appointed the FPD. (ECF No. 9.) Ultimately, Rodriguez filed a counseled, second-amended petition in June 2022. (ECF No. 29.) He raises the following claims:

1. The trial court violated Rodriguez's Sixth and Fourteenth Amendment rights to present a defense and to a fair trial when it excluded the out-of-court statement made by Abelina Ramirez to Detective Jerry Clark.

2. The trial court violated Rodriguez's Sixth and Fourteenth Amendment rights to present a defense and to a fair trial by failing to give a theory of defense instruction.

3. Based on the cumulative errors as raised on direct appeal, Rodriguez is entitled to habeas relief.

4. Trial counsel rendered ineffective assistance in violation of Rodriguez's Sixth and Fourteenth Amendment Rights by:

    a. Failing to retain an eyewitness identification expert for trial;

    b. Failing to obtain the presence at trial of material witness Abelina Ramirez;

    c. Failing to file a motion in limine prior to trial to limit the State's cross-examination as to Ramirez's guilty plea;

2

    d. Failing to object to the testimony of Detective Clark who erroneously identified Rodriguez as the shooter based upon the security footage;

    e. Failing to effectively impeach the testimony of David Luna;

    f. Failing to have a ballistics expert prepare a report and/or testify at trial to cast doubt on the State's expert;

    g. Failing to hire an expert to test physical evidence for DNA and/or fingerprints;

    h. Failing to argue at sentencing that the imposition of four consecutive sentences of 8 to 20 years constituted cruel and unusual punishment;

    i. Failing to properly prepare for the sentencing hearing by failing to investigate any mitigating evidence on behalf of Rodriguez.

## II. Motion for Leave to Conduct Discovery

### a. Legal Standard

Rule 6(a) of the Rules Governing § 2254 Cases provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure . . . ." In *Bracy v. Gramley*, 520 U.S. 899 (1997), the Supreme Court held that Rule 6 was meant to be applied consistently with its prior opinion in *Harris v. Nelson*, 394 U.S. 286 (1969), which expressly called for the adoption of the rule. 520 U.S. at 904 & 909. In *Harris*, the Supreme Court held that "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." 394 U.S. at 300. In *Bracy*, a unanimous Supreme Court overturned a decision denying discovery where the petitioner's claim of judicial bias in his particular case was based on "only a theory," where the claim was "not supported by any solid evidence" with regard to the theory, and where the Supreme Court expressly noted that "[i]t may well be, as the Court

of Appeals predicted, that petitioner will be unable to obtain evidence sufficient to support" the theory that the petitioner sought to pursue in the discovery. 520 U.S. at 908 & 909. The Ninth Circuit, consistent with *Bracy* and *Harris*, has held that habeas discovery is appropriate in cases where the discovery sought only might provide support for a claim. *See, e.g., Pham v. Terhune*, 400 F.3d 740, 743 (9th Cir. 2005); *Jones v. Wood*, 114 F.3d 1002, 1009 (9th Cir. 1997). *See also Osborne v. District Attorney's Office*, 521 F.3d 1118, 1133 (9th Cir. 2008), rev'd on other grounds, *District Attorney's Office v. Osborne*, 557 U.S. 52 (2009) (in discussing its precedent in *Jones* as to habeas discovery, the Ninth Circuit reinforced the point that a court should allow discovery that, as emphasized by the Court of Appeals, only "may establish" a factual basis for the petitioner's claim).

### b. Discovery Sought

In his renewed motion to conduct discovery, Rodriguez relates that his primary trial attorney, Lee Hotchkin, did not provide his file to any of the attorneys who subsequently represented Rodriguez in state court and that Hotchkin then destroyed the case file. (ECF No. 31 at 5.) The court denied the initial motion because Rodriguez failed to specifically identify what discovery he sought or to tie any such discovery to particular claims. (ECF No. 24.) In his renewed motion, Rodriguez specifies that he seeks to recreate trial counsel's file by requesting an order directing the attorney general to provide him with certain witness statements, DNA, and ballistics reports, and also seeks access to physical evidence offered at trial, specifically, the gun found in Rodriguez's vehicle and bullet found at the crime scene, and the shell casings and bullets tested by the State's expert. (*Id.* at 6.)

Similar to *Jones*, Rodriguez seeks "discovery" in order to recreate his own file. 114 F.3d at 1009. In *Jones*, the court held that the district court erred in denying the petitioner's request for "discovery" to recreate his file by seeking

documents from his trial lawyer, his pretrial investigator, and the prosecutor in his case. *Id.* Rodriguez likewise seeks written and audio-record witness statement and expert materials that already existed at the time of trial, but which he does not have because his trial counsel destroyed his file. Defense counsel was legally entitled to written and recorded statements by prosecution witnesses and expert materials. See NRS 174.235(1)(a) (requiring prosecution to disclose upon request "any written or recorded statements" made by prosecution witnesses) and NRS 174.234(2)(a)-(c) (requiring disclosure of a description of the expert witness's testimony, curriculum vitae, and reports).

Rodriguez also seeks access to evidence admitted at trial, including the gun found in his vehicle, the bullet found at the crime scene, and the bullets tested by the State's expert, for analysis relevant to his habeas claims. Regarding access to physical evidence, in *Jones* the court also held that the district court erred in denying the petitioner's request for an order for the FBI laboratory to conduct tests on clothing and blood samples. 114 F.3d at 1009. As the court explained in *Jones*, discovery of physical evidence and documents were "essential for Jones to develop fully his ineffective assistance of counsel claim." *Id.*

As Rodriguez makes clear, none of the items sought is new evidence and each is sought to support a specific claim. Although Respondents argue that Rodriguez fails to state good cause for obtaining these materials, they do not deny that the materials exist, Rodriguez was legally entitled to them, they were either previously disclosed or would have been accessible to trial counsel, and, if developed, could show that Rodriguez is entitled to relief on his habeas claims.

**1. Written statements of Nicholas Kopp, Martin Lewis, and Jesse Townsend**

Hotchkin mentioned on the record that these three witnesses gave written statements to Reno Police Department Detective Jerry Clark (ECF No. 31 at 6-7), but Rodriguez's current counsel does not have these statements. Rodriguez

argues that the statements are needed "in order to evaluate and/or establish the merits" (*id.* at 6) of ground 2, which alleges that the trial court violated his rights to present a defense and to a fair trial by failing to give a theory of defense instruction and ground 4(a), which alleges that trial counsel was ineffective for failing to retain an eyewitness identification expert for trial.

The statements of these witnesses, all victims of the offense, bear on their positive identification of Rodriguez as the gunman and whether trial counsel was ineffective in failing to hire an identification expert. Townsend testified that he owned the truck and he and Lewis, Rodgers and Luna were leaving a casino when Victor Arellano approached them in the parking garage yelling and angry. (ECF No. 55-36, Exh. 73 at 166-223.)[2] Rodriguez, Abelina Ramirez and Sofia Ramirez joined Arellano in harassing the other group. Rodriguez then retrieved a gun from his car and ultimately fired one shot in the air and one shot that hit the truck as the other group tried to flee. Townsend identified the gun found in Rodriguez's car as the one that Rodriguez fired in the garage. Lewis testified similarly to Townsend. (*Id.* at 91-136.) He identified Rodriguez and the gun at trial. Kopp was not part of either group and had been waiting in his car because the battery was dead. (*Id.* at 223-260.) He saw two groups of people in the garage arguing. A man wearing black ran to a car and retrieved a gun. He saw the man fire the first shot in the air; he ducked down in his car and heard the second shot. Though trial counsel may have heard these statements at trial, without them Rodriguez's habeas counsel cannot evaluate the defense theory or the reasonableness of trial counsel's decision not to hire an identification expert.

The court concludes that Rodriguez has established good cause for the discovery of the written statements of Nicholas Kopp, Martin Lewis, and Jesse Townsend, because discovery of these victims' statements may, if the facts are

---

[2] Exhibits referenced in this order are found at ECF Nos. 14, 20, 32, 46-57, 59.

6

fully developed, be able to demonstrate that Rodriguez is entitled to relief on grounds 2 and 4(a). *See Harris*, 394 U.S. at 300.

### 2. Audio recordings of Detective Clark's interviews with Abelina Ramirez and Sofia Ramirez

A report of Clark's in the record indicates that it is a brief synopsis of his recorded conversation with Abelina Ramirez and not an exact transcription. (*See* ECF No. 32-4, Exh. 19.) Clark noted in that report that a CD copy of the interview was booked into Reno Police evidence under the case number. Rodriguez insists that this evidence is relevant to grounds 1 and 4(b). In ground 1, Rodriguez contends that Hotchkin tried to introduce an admission Abelina made to Clark that she fired the gun and that the gun was hers. In ground 4(b), Rodriguez asserts that counsel was ineffective for failing to ensure Abelina appeared at trial because she could have provided exculpatory evidence. Counsel for Rodriguez has a written statement Abelina made to police in which she said: "The guns were in my arms is my blame." (ECF No. 32-2, Exh. 17.) Neither that report or the summary of Clark's interview with her reflect that she admitted to police that she fired the gun. Rodriguez argues that he needs the original recording of the interview to ascertain what admissions Abelina made to police and how she would have testified at trial. (ECF No. 31 at 7.) Clark also had a brief, written synopsis of his interview with Sofia Ramirez, in which Sofia indicated that Abelina was "directly involved in the shooting." (ECF No. 32-1, Exh. 16 at 13.)[3] Clark's notes reflect that he clearly found Sofia not credible.

The court concludes that Rodriguez has established good cause for the discovery of the recordings of Abelina's and Sofia's interviews. Sofia testified at trial for the defense that she saw Abelina fire the second shot. (ECF No. 52-1, Exh. 79 at 92-93.) Rodriguez's allegations that both Abelina and Sofia have said

---

[3] The two women are not related.

7

that Abelina was the shooter show reason to believe that he may, if the facts are fully developed, be able to demonstrate that he is entitled to relief. *See Harris*, 394 U.S. at 300.

### 3. Audio recordings of Clark's interviews with the victims Luna, Lewis, Rodgers, and Townsend

In the same report that reflects his interviews with Abelina Ramirez and Sofia Ramirez, Detective Clark states that he interviewed Martin Lewis over the phone and recorded the interview. He interviewed Townsend, Rogers, and Luna in person and there is a copy of the CD of each interview booked into Reno Police evidence under the case number. (*See* ECF No. 32-1, Exh. 16 at 10-14.) Counsel for Rodriguez argues that she needs these recordings because they bear on the reliability of these witnesses' in-court identification and testimony concerning Rodriguez, specifically, ground 2, which alleges denial of the right to present a defense and to a fair trial, ground 4(a), which alleges ineffective assistance of counsel for failure to hire an identification expert, and ground 4(e), which alleges trial counsel was ineffective in failing to impeach the testimony of David Luna. As with the first discovery request, Rodriguez's trial turned on the victims' identification of him as the gunman, so their recorded statements are critical to evaluating their testimony, the fairness of the trial, and whether trial counsel was ineffective as specified.

The court concludes that Rodriguez has established good cause for the discovery of the audio recordings of Clark's interviews with the victims Luna, Lewis, Rodgers, and Townsend because the discovery of these victims' statements, if the facts are fully developed, may demonstrate that Rodriguez is entitled to relief on grounds 2, 4(a) and 4(e).

### 4. Expert report and materials of Monica Siewersten and Matthew Noedel

The prosecution presented the testimony of Siewersten and Noedel as experts in DNA testing and ballistics examination, respectively. Counsel for Rodriguez

8

informs the court that she does not have Siewersten's expert report and accompanying documentation that was disclosed to trial counsel. (ECF No. 31 at 9-10.) Noedel, a firearms examiner, testified at trial that the bullet recovered from the scene matched the gun found in Rodriguez's car. Rodriguez's counsel has a two-page report from Noedel but believes there may be further records. (*Id.* at 10-11.) Noedel testified that he fired four bullets from the gun found in Rodriguez's car, compared them to the bullet from the scene and determined that they matched Rodriguez's gun. Rodriguez argues now that it is unclear how Noedel came to his conclusions and that a ballistics expert would need to see Noedel's documentation to evaluate his methods. Rodriguez claims these materials are relevant to ground 4(g), which alleges that trial counsel was ineffective for failing to hire an expert to have the physical evidence tested.

Siewersten, with the Washoe County Sheriff's Office Forensic Science Division, testified at trial that the DNA recovered was from at least two different sources but was insufficient to determine whether it matched samples obtained from Rodriguez and Abelina Ramirez. (ECF No. 52-1, Exh. 79 at 26-52.) She and defense counsel referred to her two-page report at trial.

Noedel testified that he was a forensic consultant specializing in firearm examination. (*Id.* at 53-69.) He examined and tested the firearm recovered from Rodriguez's car. He concluded that the bullet he was given that was recovered from the parking garage was fired by the gun found in Rodriguez's car. Defense counsel asked Noedel if he had prepared the two-page report, and Noedel indicated that he had.

As with his other requests, Rodriguez merely seeks to recreate trial counsel's file with information previously disclosed by the prosecution. While the DNA report was inconclusive, it also indicated the presence of at least two sources of DNA on the gun. Rodriguez is working backwards from the trial record to reconstruct and evaluate trial counsel's decisions. Without knowing what trial

9

counsel knew at the time, based on the expert materials he had in hand, it is impossible to know whether he acted reasonably in deciding not to hire an expert to test the physical evidence. *See Strickland v. Washington*, 466 U.S. 689 (1984) ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.").

The court concludes that Rodriguez has established good cause for the discovery of expert reports and materials of Monica Siewersten and Matthew Noedel because discovery of these materials, if the facts are fully developed, may be able to demonstrate that Rodriguez is entitled to relief on ground 4(g).

### 5. The gun found in Rodriguez's vehicle, the bullet found at the crime scene, and the shell casings and bullets tested by the State's expert

Rodriguez seeks these items from the Washoe County evidence vault or the long-term storage location in the Washoe County Sheriff's Office Forensic Science Division to develop ground 4(f), which alleges that trial counsel was ineffective in failing to have a ballistics expert prepare a report and/or testify at trial to cast doubt on the State's expert. The gun, the bullet, and the bullets tested by Noedel were offered into evidence at trial. Rodriguez wants to test them and have a ballistics expert prepare a report in order to possibly cast doubt on the findings of the State's expert, and, most critically, trial counsel's failure to hire a ballistics expert. As Rodriguez explains, trial counsel sought the appointment of a ballistics expert, indicating that he thought he needed one, but then failed to follow through and was unable to retain an expert because he ran out of time. (ECF No. 66 at 6.) If accurate, his failure to retain an expert was not "strategic," as the Nevada Supreme Court concluded. (*Id.*, citing ECF No. 14-4, Exh. 2 at 4.)

The court concludes that Rodriguez has established good cause for the discovery of trial exhibits which, if the facts are fully developed, will enable him

to demonstrate that he is entitled to relief on ground 4(g). *Harris*, 394 U.S. at 300. Allowing such access and testing is also consistent with *Jones*, in which the court allowed testing of clothing and blood samples so the petitioner could "develop fully his ineffective assistance of counsel claim." *Jones*, 114 F.3d at 1009.

### III. **Motion to Dismiss and Motion for Leave To File Exhibits Under Seal**

Because the court grants Rodriguez's discovery requests, Respondents' motion to dismiss (ECF No. 45) will be dismissed without prejudice. Respondents also filed a motion for leave to file two exhibits in support of the motion to dismiss under seal. (ECF No. 58.) While there is a presumption favoring public access to judicial filings and documents, a party seeking to seal a judicial record may overcome the presumption by demonstrating "compelling reasons" that outweigh the public policies favoring disclosure. *See Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978); *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006) (citations omitted). In general, "compelling reasons" exist where the records may be used for improper purposes. *Kamakana*, 447 F.3d at 1179 (citing *Nixon*, 435 U.S. at 598).

Here, Respondents ask to file Rodriguez's presentence investigation report ("PSI") as well as the amended PSI under seal because they are confidential under state law and were never made part of the public state-court record. (ECF No. 58 at 2.) The court has reviewed the PSIs and concludes that Respondents have demonstrated compelling reasons to file the reports under seal. Accordingly, the court grants the motion, and the reports will remain under seal.

11

### IV. **Conclusion**

IT IS THEREFORE ORDERED that Petitioner's motion for discovery **(ECF No. 31) is GRANTED**.

IT IS FURTHER ORDERED that counsel for Petitioner submit proposed subpoenas as addendum to the motion for discovery for this court's review.

IT IS FURTHER ORDERED that Respondents' motion to dismiss **(ECF No. 45) is DISMISSED** without prejudice.

IT IS FURTHER ORDERED that Respondents' motion for leave to file exhibits under seal **(ECF No. 58) is GRANTED**. The documents will remain under seal.

DATED THIS 23rd day of March 2023.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE